## MARY SMITH *v.* WILLIAM SMITH.

On a trial of an action for Divorce, it is the duty of the presiding Judge to confine the jury to the issues, by reciting the testimony and applying the law pertinent thereto. And it is error for his Honor to charge that, "it is for the jury to say whether her" (the plaintiff's) "complaints are well founded. According as they shall determine, she is to return to her home, or to have that portion of her husband's estate allotted to her, which the law allows in such cases," and such charge entitles the defendant to a new trial.

CIVIL ACTION, (petition for Divorce *a mensa et thoro,*) tried

before his Honor, *Judge Buxton*, at Spring Term, 1873, of HARNETT Superior Court.

The plaintiff and defendant had been married 46 years, had lived together until sometime in the year 1870, and had raised a family of children.

As sent up to this Court the record states, that the petitioner offered evidence tending to prove that she and her husband lived unhappily together for upwards of 20 years; that this unhappiness was occasioned by his forming an unlawful connection with another woman, one Mary Wood, who lived on his plantation, and by whom he had a number of children ; that this woman was the cause of frequent quarrels between them, in which quarrels he would curse, threaten and sometimes whip her. That after the death of Mary Wood, which occurred some eight or nine years ago, she and her husband still got on badly together; that some of the Wood children were taken to the house to live, and called him " pap "; that her husband kept the keys and gave out the provisions, she having nothing to do with the house-keeping, except to do the cooking; that when he was away, he left the keys with some of the Wood children, who "jawed" her more than they ought to. It was further stated, that when he was drinking, he would "curse and rear around," and that she was afraid of him ; that in 1870, between sunset and dark, she went over to a neighbor's house, looking troubled and scared, and that she had not lived with him since. That the parties had entered into a written agreement of separation, but that he had not furnished her all the articles for her support, therein stipulated, particularly the whole of the flour agreed on.

There was no evidence that the defendant whipped his wife after the death of Mary Wood. It was proved by one of the plaintiff's witnesses, that she had sometimes invited one of the Wood children to stay with her at night ; that she had been heard to say, all she wanted was to see the last thing he had destroyed, and then she would die satisfied; and that the reason assigned by the husband for not entrusting to her the

keys was, that she had sold off some corn, and he was afraid she would sell off meat; and further, that after she had left him, he had rented out his land, but reserved a house for her, in case she took a notion to come back.

During the progress of the trial, it became a question, how far back the plaintiff should be allowed to go, in furnishing evidence of acts of indignity from her husband to herself; and his Honor was of opinion at first, and so ruled, and had the issue so drawn, limiting the inquiry to a period of ten years. See Code of Civil Procedure, section 37. Under this ruling, (the defendant having introduced no evidence,) the plaintiff's counsel had commenced to address the jury and was conforming his argument to the ruling of the Court, when his Honor's attention was called by defendant's counsel, to section 34, subdivision 5, of the Code, limiting the period for the commencement of actions for criminal conversation, &c., to three years. His Honor thereupon stopped the argument, and ordered the issues to be so amended as to restrict the inquiry to the indignities, &c., offered by the husband to a period of *three* years next before commencing the action, instead of to *ten* years, as the issue was originally framed. This being done, the plaintiff asked leave to offer additional testimony, which leave was accordingly granted and the evidence re-opened.

The evidence offered (after the examination of witnessess was again permitted) by plaintiff and defendant, being immaterial to a proper understanding of the decision of this Court, need not be stated. The plaintiff, herself, was examined after objection by defendant.

In the course of his charge to the jury, his Honor made use of the following expressions:

"This is a sad, sad case, as sad a case as I ever saw in the court house. The parties, petitioner and defendant, have been married 46 years, and now the petitioner asks for a separation from the bed and board of her husband on the ground of illtreatment. It is for the jury to say, whether her complaints are well founded. According as they shall determine, she is to

return to her home, or to have that portion of her husband's estate allotted to her, which the law allows in such cases." To this the defendant excepted.

The following issues, after being amended under the direction of the Court, were submitted to the jury, to wit:

1. Did the cause of complaint exist six months previous to this suit?

2. Were the parties married and resident in this State for three years previous to this suit?

3. Has the defendant during the three years of their married life previous to this suit, offered such indignities to the person of his wife, the petitioner, as to render her condition intolerable and her life burdensome?

The jury, for their verdict, found all the issues in favor of the plaintiff. Rule fer a new trial for alleged error of the Court:

1. In admitting the petitioner to testify;

2. In the portion of the charge above quoted;

3. In that the defendant's case had been prejudiced by first allowing proof of ill-treatment as far back as ten years, and then after the case was concluded, re-opening it, and allowing the wife to testify as to treatment within three years.

Rule discharged. Judgment and appeal by defendant.

*Neill McKay* and *Hinsdale,* for appellant.
*Spears,* contra.

BYNUM, J. That part of his Honor's charge to the jury which is excepted to by the defendants, is as follows: " This is a sad, sad case, as sad a case as ever I saw in the court house. The parties, petitioner and defendant, have been married forty-six years, and now the petitioner asks for a separation from the bed and board of her husband, on the ground of ill-treatment. It is for the jury to say whether her complaints are well founded. According as they shall determine, she is to return to her home, or to have that portion of her husband's

estate allotted to her which the law allows in such cases." As no other part of the charge is set forth in the case, we must assume that his Honor, in the other parts of his charge to the jury, did not qualify, explain or substantially vary that portion which is recited. The question is, did his Honor err therein to the prejudice of the defendant? Issues of fact in writing had been submitted to the jury and much conflicting testimony had been given by the plaintiff and defendant, and it was upon the trial upon these issues that the charge above recited was given. Suppose these questions had been submitted to the jury as an issue, to wit: Are the complaints of the petitioner well founded? and the jury had responded in the affirmative. Could a Court upon that finding decree a divorce? Clearly not, because such an issue is wanting in legal accuracy and substance, and the finding must be equally defective. The petition contains many complaints, some irrelevant, some immaterial and some in aggravation only, and the very purpose of the issue was, from the mass to separate what was material and submit it to the distinct consideration of the jury, untainted by these extraneous matters which are too often lugged in before the jury and carry verdicts against right.

As the record before us shows, his Honor, inadvertently no doubt, submitted to the consideration of the jury, not the issues which alone were properly before it, but the " complaint " of the petitioner, which were not before the jury, but were contained in the pleadings; and the jury were directed not to respond to the issues, but to ascertain whether the " complaints of the petitioner were well founded." Possibly the jury was not misled, but where there is error in the charge of the Court, the conclusion of law is, that the jury were misled to the prejudice of the defendant. The law therefore applies the remedy by awarding a *venire de novo.* It was the duty of the Court to confine the jury to the issues by reciting the testimony and applying the law pertinent to them. But his Honor opened to the jury a much wider field of investigation, and in this there is error. As the case goes back, it is unnecessary to ex-

amine the other interesting questions presented by the excep-
tions. Before another trial, it would be well for the counsel
of the plaintiff to consider whether the complaint will support
a decree for divorce. The law does not encourage divorces,
and before the Court will grant them, the petition and subse-
quent pleadings must conform to the rules prescribed with
much particularity by statute. Battle's Revisal, Chap. 31.

PER CURIAM. *Venire de novo.*